## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| YVETTE JOY LIEBESMAN, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No.: 4:14-cv-01653-RLW |
| COMPETITOR GROUP, INC., | ) ) | **Jury Trial Demanded** |
| Defendant. | ) ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................*ii*

INTRODUCTION AND SUMMARY OF ARGUMENT.......................................................... 1

APPLICABLE LEGAL STANDARDS.................................................................................. 2

ARGUMENT ..................................................................................................................... 3

**I.** PLAINTIFF'S COMPLAINT SHOULD NOT BE DISMISSED BECAUSE AN FLSA   EXEMPTION DOES
NOT UNMISTAKABLY APPLY .......................................................................................... 3

    A.         The FLSA and its Exemptions................................................................. 3

    B.         Rock 'n' Roll Marathon Series Events are Not Exempt Establishments................ 4

          1.     *Rock 'n' Roll Marathon Series Events are Not Separate Establishments* ............. 5

          2.     *Rock 'n' Roll Marathon Series Events are Not "Amusement or Recreational"*..... 8

**II.**THE COMPLAINT SHOWS THAT PLAINTIFF AND THE PROPOSED CLASS ARE EMPLOYEES,
SUBJECT TO THE FLSA, OR, AT A MINIMUM, FACTUAL DEVELOPMENT IS NECESSARY ......... 9

    A.         Plaintiff Is an Employee Under the Plain Text of the FLSA .................................. 9

    B.         Department of Labor Guidance is Emphatic that For-Profit Corporations Cannot
Rely on Volunteer Labor ....................................................................................... 10

    C.         Case Law Construing the FLSA Confirms That Plaintiff Is an Employee, Or At
Least That Factual Development Is Necessary........................................................ 11

**III.** PLAINTIFF ADEQUATELY PLEADS FRAUD UNDER RULE 9 ...................................... 14

**IV.** TO THE EXTENT PLAINTIFF'S COMPLAINT IS FOUND DEFICIENT, PLAINTIFF SEEKS LEAVE TO
AMEND …………......................................................................................................…..15

CONCLUSION................................................................................................................. 15

TABLE OF AUTHORITIES

## Cases

*A.H. Phillips, Inc. v. Walling*, 324 U.S. 490 (1945) .................................................. 3, 4

*Abels v. Farmers Commodities Corp.*, 259 F.3d 910 (8th Cir. 2001) ............................. 3

*Adams v. Detroit Tigers Inc.*, 961 F. Supp. 176 (E.D. Mich. 1997) ............................... 8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) .................................................. 3

*Blaes v. Johnson & Johnson*, No. 4:14-cv-213-RLW, -- F. Supp. 3d --, 2014 WL 6885830
    (E.D. Mo. Dec. 4, 2014) ......................................................................................... 3, 14

*Brennan v. Goose Creek Consol. Independent School Dist.*, 519 F.2d 53 (5th Cir. 1975) ........... 6

*Brennan v. Yellowstone Park Lines, Inc.* 478 F.2d 285 (10th Cir. 1973) ...................... 8

*Bridewell v. Cincinnati Reds*, 68 F.3d 136 (6th Cir. 1995) ........................................... 8

*Butano v. Wells Fargo, N.A.*, No. 4:13-cv-1652-HEA, 2014 WL 3384733 (E.D. Mo. July
    10, 2014) ................................................................................................................. 3

*Chen v. Major League Baseball*, 6 F. Supp. 3d 449 (S.D.N.Y. 2014) ......................... 7, 8

*Chessin v. Keystone Resort Mgmt, Inc.*, 184 F.3d 1188 (10th Cir. 1999) .................... 8

*City of Milwaukee v. Illinois and Michigan*, 451 U.S. 304 (1981) ............................... 4

*Doe v. Butler Amusements, Inc.*, -- F. Supp. 3d --, 2014 WL 5465599 (N.D. Cal. Oct. 27,
    2014) ...................................................................................................................... 5, 7

*Donovan v. Tony and Susan Alamo Found.*, 722 F.2d 397 (8th Cir. 1983) ................. 12

*Fast v. Applebee's Intern., Inc.*, 638 F.3d 872 (8th Cir. 2011) ................................... 4, 11

*Fry v. Accent Marketing Services, LLC*, No. 4:13-cv-59-CDP, 2013 WL 2403669 (E.D.
    Mo. May 31, 2013) .................................................................................................. 4

*Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28 (1961) ......................... 11, 12

*GP & W, Inc. v. Int'l Exch., Servs., LLC*, No. 4:12-cv-00404-ERW, 2012 WL 4513851
    (E.D. Mo. Oct. 2, 2012) ........................................................................................... 3

*Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590 (11th Cir. 1995) ............................. 8

*Lucas v. Jerusalem Cafe, LLC*, 721 F.3d 927 (8th Cir. 2013) ........................... 4, 9, 10, 11

*Ludden v. Maryland Heights Police Dept.*, No. 4:14-cv-1110-RLW, 2014 WL 4724693
    (E.D. Mo. Sept. 23, 2014) ........................................................................................ 2

*Marshall v. N.H. Jockey Club, Inc.*, 562 F. 2d 1323 (1st Cir. 1977) ........................... 7

*McMaster v. State of Minn.*, 30 F.3d 976 (8th Cir. 1994) ........................................... 11

*Mulhall v. Advance Security, Inc.*, 19 F. 3d 586 (11th Cir. 1994) .............................. 7

*Okoro v. Pyramid 4 Aegis*, 2012 WL 1410025 (E.D. Wisc. April 23, 2012) .............. 14

*Rogers v. Schenkel*, 162 F.2d 596 (2d Cir. 1947) ....................................................... 13

*Tony and Susan Alamo Foundation v. Sec'y of Labor*, 471 U.S. 290 (1985)...................... passim

*U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552 (8th Cir. 2006) ............................... 3, 14

*Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947)....................................................... passim

## Statutes

29 U.S.C. § 202 ........................................................................................................ 3

29 U.S.C. § 203 ....................................................................................................... 9, 10

29 U.S.C. § 206 ....................................................................................................... 3, 9

29 U.S.C. § 213 ........................................................................................................ 4

## Rules

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 2

Fed. R. Civ. P. 15 ................................................................................................... 15

Fed. R. Civ. P. 9(b) ............................................................................................. 3, 14

Local Rule 4.02 ..................................................................................................... 15

## Regulations

29 C.F.R. § 1620.9 ................................................................................................ 5, 6

29 C.F.R. § 779.23 .................................................................................................. 5

29 C.F.R. § 779.305 ............................................................................................. 5, 6

## Other Authorities

Department of Labor, Wage and Hour Division, *Field Operations Handbook* (1994) ........... 5

Dept. of Labor, *Fair Labor Standards Act Advisor*, "Volunteers," ............................................. 11

Dept. of Labor, Opinion Letter, 1999 WL 1788145 (Aug. 19, 1999) .......................................... 10

Dept. of Labor, Opinion Letter, 2002 WL 32406599 (Oct. 2, 2002).......................................... 10

Dept. of Labor, Opinion Letter, 2002 WL 32406599 (Oct. 7, 2002).......................................... 10

## Introduction and Summary of Argument

Competitor Group, Inc. ("CGI"), a for-profit company, employs a business model that relies on the efforts of thousands upon thousands of unpaid laborers to operate its core function, putting on the Rock 'n' Roll Marathon Series (the "Series") of participatory athletic competitions. *See generally* Amended Collective and Class Action Complaint ("Complaint" or "AC").  In order to enlist this indispensable free labor, CGI has implemented a scheme by which it gives prospective "volunteer" employees the impression that their efforts are for the benefit of charitable causes or community service.  *E.g.*, AC ¶¶ 1-2, 31, 35, 48, 51, 54. In fact, the labor inures to the benefit of CGI. AC ¶ 42, 48.  Plaintiff Yvette Liebesman was one of these "volunteer" employees. She sues on behalf of herself and others similarly situated to recover unpaid wages and other damages.

CGI moves to dismiss. It argues, first, that it can avoid the Fair Labor Standards Act's governance by shoehorning itself into a narrowly tailored exemption for seasonal "amusement and recreation establishments"; and, second, that Plaintiff was a "volunteer"—not an "employee"— and thus outside the FLSA's province. As to the first argument, the exemption CGI invokes is inapt to describe the year-round race Series coordinated from CGI's California headquarters. Moreover, the regulatory framework that governs this exemption and the decisions interpreting it demonstrate that a factual record is necessary to determine whether each Series event can be a distinct "establishment." Particularly in light of the facts alleged, as more fully described *infra*, CGI thus cannot "plainly and unmistakably" establish its affirmative defense at this stage.  Nor may CGI prevail at this stage by arguing that its workers are not actually "employees" because they are "volunteers" that do not expect to be paid: this argument runs contrary to the positions of all three branches of the federal government—the text of the FLSA as enacted by Congress, the interpretation by the Supreme Court, and the guidance of the Department of Labor. There is, moreover, no broad FLSA carve-out for "volunteers" and, even under the "economic reality" test used by courts looking at the totality of the circumstances, assessment of the facts, as described *infra*, would be required.

1

In any event, no court has ever endorsed the use of "volunteer" labor in a for-profit business model such as this one. It is inimical to the FLSA, which seeks to ensure fair business practices and to protect the American workforce from exploitation, and the DOL is adamant that for-profit entities may not make use of "volunteer" labor. CGI nonetheless suggests that it is *Plaintiff* whose claims "appear to hinge on a misunderstanding of applicable law."  *See* CGI Mem. in Supp. Mtn. to Dismiss ("Def. Br.") [ECF 26-1] at 12. But it is CGI that attempts to load the weight of its entire business model onto a handful of words it extracts from a 70-year old court decision dealing with the labor of trainees likened to students, *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947)—a decision which the Supreme Court itself later distinguished on bases every bit as applicable to CGI's practices. *See Tony and Susan Alamo Foundation v. Sec'y of Labor*, 471 U.S. 290, 299 (1985) ("*Alamo*") (explaining that *Portland Terminal* turned on the lack of any benefit to the employer from the labor of the unpaid workers and also that employees may not simply vitiate the FLSA by calling themselves "volunteers"). Plaintiff is aware of no case where a for-profit entity so completely has ignored DOL guidance as to the core of its business model and CGI cites none. At a minimum, in light of the unique circumstances presented here, Plaintiff should be allowed to create a factual record upon which the Court may evaluate her claims; CGI presents no case showing otherwise.

Finally, CGI argues that Plaintiff's fraud claim fails under Rule 9(b). But Plaintiff plausibly alleges detailed specifics of the "who, what, where, when, and how" CGI misrepresented the charitable nature of "volunteer" opportunities for the Series.  Plaintiff's Complaint is more than sufficient under Eighth Circuit law to provide CGI notice of the claims against it.

Defendant's motion should be denied in its entirety.

## APPLICABLE LEGAL STANDARDS

A court evaluating a Rule 12(b)(6) motion "liberally construe[s] the complaint in the light most favorable to the plaintiff and accept[s] the factual allegations as true." *Ludden v. Maryland Heights Police Dept.*, No. 4:14-cv-1110-RLW, 2014 WL 4724693, at *2 (E.D. Mo. Sept. 23, 2014). A complaint need only plead "enough facts to state a claim to relief that is plausible on its

face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007). A motion to dismiss under Rule 12(b)(6) "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts which would entitled the plaintiff to relief." *GP & W, Inc. v. Int'l Exch., Servs., LLC*, No. 4:12-cv-00404-ERW, 2012 WL 4513851, at *2 (E.D. Mo. Oct. 2, 2012).

Rule 9(b) requires a level of particularity about the circumstances constituting fraud. Sufficient pleadings include "such facts as the time, place, and content of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *Blaes v. Johnson & Johnson*, No. 4:14-cv-213-RLW, -- F. Supp. 3d --, 2014 WL 6885830, at *2 (E.D. Mo. Dec. 4, 2014) (quoting *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006)). "[A] pleading alleging fraud need not provide anything more than notice of the claim," enough to enable the defendant to respond specifically to the allegations. *Butano v. Wells Fargo, N.A.*, No. 4:13-cv-1652-HEA, 2014 WL 3384733, at *2 (E.D. Mo. July 10, 2014) (citing *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001)).

**ARGUMENT**

# I.   PLAINTIFF'S COMPLAINT SHOULD NOT BE DISMISSED BECAUSE AN FLSA EXEMPTION DOES NOT UNMISTAKABLY APPLY

### A.     The FLSA and its Exemptions

The Fair Labor Standards Act was crafted "'to extend the frontiers of social progress' by 'insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (quoting Message of the President to Congress, May 24, 1934). The statute requires that "[e]very employer shall pay to each of his employees … engaged in commerce … wages…." 29 U.S.C. § 206(a).  The Supreme Court has recognized that a fundamental purpose of the FLSA was to prevent "unfair method[s] of competition" by businesses paying sub-standard or, in the case of claimed "volunteers" no, wages to employees.  *See Alamo*, 471 U.S. at 299 (citing 29 U.S.C. § 202(a)(3)); *see also id.* at 302 (permitting an FLSA exception for anyone claiming to be a volunteer "would be likely to exert a general downward pressure on wages in competing businesses.").

3

The FLSA boasts "sweeping definitions of 'employer' and 'employee'" and a broad reach. *Lucas v. Jerusalem Cafe, LLC*, 721 F.3d 927, 934 (8th Cir. 2013). It pairs a number of specifically-enumerated, narrow exemptions, *see* 29 U.S.C. §§ 213, with its otherwise extensive reach, demonstrating that Congress "'knows how to' limit this broad definition 'when it means to.'" *Lucas*, 721 F.3d at 934 (quoting *City of Milwaukee v. Illinois and Michigan*, 451 U.S. 304, 329 n. 22 (1981)). Among these targeted carve-outs is a seasonal exemption for employees "employed by an establishment which is an amusement or recreational establishment, organized camp, or religious or non-profit educational conference center" if the establishment "does not operate for more than seven months in any calendar year…." 29 U.S.C. § 213(a)(3)(A).

   B.   **Rock 'n' Roll Marathon Series Events are Not Exempt Establishments**

FLSA exemptions, including that for seasonal "amusement or recreational establishments," operate as affirmative defenses, and "the employer bears the burden of proof to establish that an exemption applies." *See Fast v. Applebee's Intern., Inc.*, 638 F.3d 872, 882 (8th Cir. 2011). Unless it is apparent on the face of the complaint, an affirmative defense "is normally not an appropriate basis upon which to grant a motion to dismiss or for judgment on the pleadings." *Fry v. Accent Marketing Services, LLC*, No. 4:13-cv-59-CDP, 2013 WL 2403669 at *4 (E.D. Mo. May 31, 2013). FLSA exemptions must "be narrowly construed" and confined to "those plainly and unmistakably within [the statute's] terms and spirit…." *A.H. Phillips*, 324 U.S. at 493.

CGI argues that the seasonal amusement or recreational establishment exemption insulates it from FLSA liability for Series events. As an initial matter, Plaintiff proceeds here against *Competitor Group, Inc.*, and not against a separate entity that is the St. Louis event in CGI's Rock 'n' Roll Series.  (Indeed, there is no separate legal entity, AC ¶ 33.) Plaintiff was employed by CGI, from CGI's headquarters, from which it produces and manages the Series for at least nine months out of every year. AC ¶¶ 10–12, 33. Treated as a series (which is how CGI promotes the races, AC ¶¶ 12-18, 30), there is no dispute that the Rock 'n' Roll events would fall outside the exemption.  In order for this motion to succeed on the basis of the seasonal exemption, then, CGI must prove from the face of the complaint that each of its individual Rock 'n' Roll Series events

standing alone, is "plainly and unmistakably"—in "terms and spirit"—a separate amusement or recreational establishment.  This it cannot do—and particularly not on the current record.

> 1.     *Rock 'n' Roll Marathon Series Events are Not Separate Establishments*

CGI's argument to label each Series event its own establishment (and to thus stay below the seven-month threshold) turns entirely on convincing the Court that an establishment refers only to "a distinct physical place of business," and that the Court need look no further. But this significantly understates the complexity of the question the Court actually must address. CGI's position stems from the DOL regulations distinguishing "establishments" from "enterprises." *See* 29 C.F.R. § 779.23. In the context of Part 779 of Title 29, titled "The Fair Labor Standards Act as Applied to Retailers of Goods or Services" and many standard businesses, this makes sense; the chain-store model with its dichotomy of individual establishments and the overarching enterprise fits well. Although the DOL notes that this definition is the general one to be used in the FLSA, it is far from the only guidance on the topic. CGI ignores this guidance, likely because it implicates a more context-specific, factual analysis on which CGI cannot prevail under Rule 12.

For instance, CGI ignores 29 C.F.R. § 779.305, a DOL regulation that highlights that a "distinct physical place of business" is not always the end of the test.  Under that regulation, to be separate establishments, "physical separation is a prerequisite," but it alone is not sufficient.  The separate units must also be "functionally operated as … separate unit[s]" with "separate records[] and separate bookkeeping" and have "no interchange of employees." [1] CGI also ignores an EEOC regulation interpreting "establishment" in the Equal Pay Act, which is part of the FLSA.  *Doe v. Butler Amusements, Inc*., -- F. Supp. 3d --, 2014 WL 5465599, at *7 (N.D. Cal. Oct. 27, 2014); *see* 29 C.F.R. § 1620.9. That regulation maintains that some circumstances "may call for two or more distinct physical portions of a business enterprise being treated as an establishment." 29 C.F.R.

---

[1] The DOL's Field Operations Handbook further distances the establishment concept from CGI's simple "distinct physical place of business" litmus test.  *DOL Handbook* § 25j05, available at http://www.dol.gov/whd/FOH/FOH_Ch25.pdf ("a convention is not considered an exempt establishment").

§ 1620.9(b). This is fact-dependent, but § 1620.9(b) specifically describes situations where "a central administrative unit may hire all employees, set wages, and assign the location of employment; employees may frequently interchange work locations; and daily duties may be virtually identical and performed under similar working conditions." *Id.*

Plaintiff's allegations, accepted as true, offer extensive detail for these functional, factual analyses.  For instance, Plaintiff alleges that the Rock 'n' Roll events are operated, organized, and marketed as a "Series" or a "tour," (AC ¶¶ 12-18, 30), and that this is orchestrated out of CGI's San Diego corporate headquarters (AC ¶ 33, 45, 46). The central administrative unit of CGI hires all employees (AC ¶¶ 33, 50-53), sets wages (AC ¶ 37), and assigns locations of employment (AC ¶¶ 37, 42, 44-46, 56). Plaintiff alleges that CGI uses many of the same employees and transports certain equipment for many or all of the races (AC ¶ 34). CGI, then, bears more than a passing similarity to the DOL's examples; in actuality it is exactly the sort of business that calls for treatment as a single establishment under the regulations. While 29 C.F.R. § 779.305 focuses on multiple establishments within the same premises, and § 1620.9(b) restrains itself by its terms to "unusual circumstances," both regulations interpret "establishment" under the FLSA.  Further, *this case undeniably presents unusual circumstances*. There is no close analog to this case; no other case of which Plaintiff is aware involves a for-profit entity's consistent and repeated use of legions of unpaid labor in order to carry out its core business—perhaps because few, if any, such entities have attempted this in the face of the DOL's vehement insistence that such is not FLSA-compliant, *see* Point II.B, *infra*. Whatever the reason, these are unusual circumstances and the Court should allow development of a factual record in order to evaluate the practice complained of.

The body of available caselaw underscores this. The § 1620.9(b) criteria are taken primarily from *Brennan v. Goose Creek Consol. Independent School Dist.*, 519 F.2d 53, 56 (5th Cir. 1975), which held that "there may be situations in which a single establishment could include operations at more than one physical location."  In *Brennan*, the court found that all of the schools in a single school district (spanning multiple distinct physical locations) constituted a single establishment for FLSA purposes. *Id.* at 58. The court focused on the central administration of the district's

hiring, wage determinations, and work assignments. *Id.* at 56-57.  In *Mulhall v. Advance Security, Inc.*, the Eleventh Circuit concluded that factual issues about the centralized control and functional interrelationships between physically distinct locations precluded summary judgment on the FLSA establishment issue.  19 F.3d 586 (11th Cir. 1994).  *See also Marshall v. N.H. Jockey Club, Inc.*, 562 F. 2d 1323, 1331-32 (1st Cir. 1977) (degree of actual economic independence, rather than simple physical separation, key to applying seasonality exemption). One of the most recent cases on the topic, *Butler Amusements, Inc.*, is also instructive.  It involved a travelling carnival company that set up operations at distinct physical locations for 9 to 10 days at a time.  2014 WL 5465599, at *1-2.  In defending a wage action, the company argued that it did not have to comply with the FLSA because each carnival or event was a discrete seasonal "establishment."  The court denied the company's summary judgment motion, noting that the factual record was insufficient to determine whether the individual events should be considered the relevant establishments— despite their physical distinctness.  *Id.* at *11.[2]

CGI chiefly relies on *Chen v. Major League Baseball*, 6 F. Supp. 3d 449 (S.D.N.Y. 2014), a decision the *Butler Amusements* court studied and diverged from.  *Butler Amusements, Inc.*, 2014 WL 5465599, at *11. In *Chen*, the court ruled that Major League Baseball's annual FanFest, produced in conjunction with the MLB All-Star Game festivities, was a separate establishment from the league's yearlong activities. *Id. Chen* of course is not binding on this Court, though it is distinguishable on multiple fronts in any event. Where the FanFest event in *Chen* was a small, ancillary portion of MLB's business—a once-a-year expo as part of a larger set of once-a-year festivities, itself only a sliver of the much bigger operation of running the league—the Rock 'n'

---

[2] Even if CGI were correct that any "distinct physical place of business" represents an establishment, in the context of this case that proposition yearns for factual development.  CGI presents no authority for an argument that would permit the Court to determine that the entire City of St. Louis, for instance, is CGI's establishment, or that its establishment is made up of the City's public streets and rights-of-way, and, if so, which streets and rights of way?  CGI effectively wants the Court to say that its St. Louis "operation" is an establishment, but much of *that* operation is coordinated from CGI headquarters, and a treatment so broad is, in any event, utterly divorced from the "distinct physical place of business" test CGI champions.

7

Roll Marathon events *are* CGI's business; the Series is what CGI does. The situations would be more analogous if MLB gave up baseball games and produced bi-monthly FanFest events, in different locations, virtually year-round; or if it moved its principal business to a different location every six months to avoid FLSA governance. In neither situation would MLB be within the terms—and certainly not within the spirit—of the FLSA, let alone plainly and unmistakably so.

Importantly, *Chen*, which is now fully briefed on appeal in the Second Circuit, is the only decision Plaintiff is aware of—and CGI cites no others—where a court has dismissed a complaint at the pleading stage on the basis of the seasonal amusement or recreational establishment exemption.  CGI cites *Brennan v. Yellowstone Park Lines, Inc.* 478 F.2d 285 (10th Cir. 1973) (appeal from summary judgment); *Chessin v. Keystone Resort Mgmt, Inc.*, 184 F.3d 1188 (10th Cir. 1999) (same); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590 (11th Cir. 1995) (same); and *Adams v. Detroit Tigers Inc.*, 961 F. Supp. 176 (E.D. Mich. 1997). *Adams* is also a summary judgment case. Indeed, the court in *Adams* determined that the baseball team did *not* qualify for the seven-month exemption because it was "generally a year-round operation." *Id.* at 179-81 (agreeing with *Bridewell v. Cincinnati Reds*, 68 F.3d 136, 138 (6th Cir. 1995)).  With the interplay between the factual nature of the "establishment" analysis and the seasonal exemption's status as an affirmative defense, this dearth of Rule 12 dismissals is unsurprising.

> 2. *Rock 'n' Roll Marathon Series Events are Not "Amusement or Recreational"*

CGI argues that the Rock 'n' Roll Series races fit the seasonal amusement or recreational exemption because they are "sports events." Def. Br. At 5-6.  But CGI's races are not sports events in the same context as any of the examples it cites.  As alleged in the Complaint, *participants pay* to compete in the races and *spectators do not pay* to attend.  AC ¶ 22.  This strikes a glaring contrast with the "sports event" examples CGI provides, which are fundamentally spectator events. People pay to attend amusement parks, seasonal carnivals, and Major League Baseball games (and

FanFest[3]), but this is not CGI's business model. CGI's operations more closely align with the use of unpaid labor to operate a for-profit gym or yoga class. Far from plainly and unmistakably proving that the exemption applies to its events, CGI does not point to a single analogous situation where a court or the DOL has endorsed such a business model. At the very least, dismissal is not warranted for need of a more developed factual record to better define Defendant's events.

## II.   THE COMPLAINT SHOWS THAT PLAINTIFF AND THE PROPOSED CLASS ARE EMPLOYEES, SUBJECT TO THE FLSA, OR, AT A MINIMUM, FACTUAL DEVELOPMENT IS NECESSARY

There is no dispute that the FLSA requires employers to pay employees engaged in commerce a minimum wage.  29 U.S.C. § 206.  CGI argues that it is not required to pay Plaintiff and the proposed class because they are "volunteers" rather than employees.  The FLSA contains no wholesale exception for "volunteers," and CGI's position is wrong under the statute's plain text, under Department of Labor guidance, and under the cases construing the FLSA.

### A.    **Plaintiff Is an Employee Under the Plain Text of the FLSA**

In statutory interpretation, the text is the starting point. *Lucas*, 721 F.3d at 933.  The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee…." 29 U.S.C. § 203(d). With only certain specifically-enumerated exceptions, the FLSA defines an "employee" simply as "any individual employed by an employer." 29 U.S.C. § 203(e)(1).[4]  Similarly broad is the definition of "employ":  "to suffer or permit to work." 29 U.S.C. § 203(g).  CGI does not dispute that it "suffers or permits to work" Plaintiff and the "volunteer" laborers. It disputes only that Plaintiff is an "employee," a term which

---

[3] In *Chen*, it was not disputed that MLB's FanFest was an "amusement or recreational" event. 6 F.Supp.3d at 456.

[4] The enumerated exceptions reach only certain individuals employed by a public agency, certain agricultural employees, and an individual who, where other conditions are met, "volunteers to perform services for a public agency." 29 U.S.C. § 203(e)(2)–(e)(4). Individuals who volunteer services "solely for humanitarian purposes to private non-profit food banks" also are not considered "employees" under the FLSA.  29 U.S.C. § 203(e)(5).

has "the broadest definition that has ever been included in any one act," and that Congress "'[knew] how to' limit … 'when it mean[t] to.'" *Lucas*, 721 F.3d at 934 (citations omitted).

CGI argues that Plaintiff cannot be an employee because she "volunteered" her labor but, as discussed in footnote 4, *supra*, the FLSA contains only two narrowly circumscribed exceptions for "volunteers" and Congress chose not to extend either of these carve-outs to for-profit entities. CGI is neither a "public agency," 29 U.S.C. § 203(e)(4)(A), nor a "non-profit food bank" as to which individuals volunteer services "solely for humanitarian purposes," 29 U.S.C. § 203(e)(5). That Congress exempted laborers from the FLSA's sweep in two specific "volunteer" scenarios, but not in any other circumstances—and certainly not in respect to for-profit employers— demonstrates that a broader exemption was not envisioned.  Indeed, these two exceptions would be rendered completely superfluous by the exception CGI champions, where any individual who "volunteers" removes herself from the definition of employee and thus from FLSA protection. The Complaint alleges that Plaintiff is an individual employed by an employer, *i.e.*, an employee.

B.    **Department of Labor Guidance is Emphatic that For-Profit Corporations Cannot Rely on Volunteer Labor**

The Department of Labor vehemently disagrees with CGI's contention that a for-profit employer can simply label its workforce "volunteer" and avoid its FLSA obligations. *See*, *e.g.*, DOL Op. Letter, 1999 WL 1788145, at *2 (Aug. 19, 1999) ("Under the FLSA, individuals may not volunteer services to private sector for profit employers."); DOL Op. Letter, 2002 WL 32406599 (Oct. 2, 2002) (unpaid student volunteers bagging groceries for for-profit entity were employees for FLSA despite charitable purpose); DOL Op. Letter, 2002 WL 32406599 (Oct. 7, 2002) (consistent with *Alamo*, a fundamental FLSA purpose is preventing unfair competitive advantages through payment of substandard wages; individuals may not waive or decline statutory wage entitlements by classifying their labor as "volunteering").

Indeed, according to the DOL: "Individuals who volunteer or donate their services, usually on a part-time basis, for <u>public service, religious or humanitarian objectives</u>, not as employees and without contemplation of pay, are not considered employees of the religious, charitable or

10

similar **non-profit** organizations that receive their service"; however "Under the FLSA, employees may not volunteer services to **for-profit** private sector employers." DOL, FLSA Advisor, "Volunteers," *available at* http://www.dol.gov/elaws/esa/flsa/docs/volunteers.asp (emphasis in original). DOL's position should be deemed persuasive and afforded *Skidmore* deference "to the extent there is any statutory ambiguity." *Lucas*, 721 F.3d at 936; *see also Fast*, 638 F.3d at 878.

C.   **Case Law Construing the FLSA Confirms That Plaintiff Is an Employee, Or At Least That Factual Development Is Necessary**

Although there is no simple carve-out of "volunteers" from FLSA coverage, courts take a "common sense" view of the situation to determine whether an individual is an employee, Def. Br. at 13, and look at the "economic reality" of the relationship. *See Alamo*, 471 U.S. at 293-94 (citing *Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28 (1961)). CGI argues that this determination may be made at the pleading stage, but the only case it cites that is binding on this Court is *McMaster v. State of Minn.*, 30 F.3d 976 (8th Cir. 1994). In *McMaster*, given that the prisoner-plaintiffs were required as part of their sentences to work in the "prison industries" programs, the court had no trouble concluding that the "economic reality of the relationship between inmates and the DOC dictates that the inmates not be considered employees." *Id.* at 980.

Not surprisingly, the common sense assessment of the "employee" status at issue in virtually all of the cases cited by CGI is *not* made at the pleadings stage. *Alamo* itself, for instance, is a post-trial decision. *See* 471 U.S. at 293. CGI purports to find safety in *Alamo*'s acknowledgment that "An individual may work for a covered enterprise and nevertheless not be an 'employee,'" Def. Br. at 11, but apparently misses the point that this sentence merely leads into the *Alamo* Court's discussion of the very different—and ultimately distinguished—decision in *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947).[5] CGI founds its entire argument on the

_____

[5] *Portland Terminal* (also not decided at the pleading stage), turned on the question whether certain trainees involved in the respondent railroad's training course were employees for purposes of the FLSA. The trial court found that the trainees' "activities do not displace any of the regular employees, who do most of the work themselves, and must stand immediately by to supervise whatever the trainees do. The [trainees'] work does not expedite the company business, but may, and sometimes does, actually impede and retard it." 330 U.S. at 149-50. Analogizing the trainees

11

fiction that *Portland Terminal* and *Alamo* support it, but the *Portland Terminal* trainee/educational dynamic is wholly absent in the CGI business model (and the labor undeniably inures to CGI's benefit), and CGI misses the primary takeaway from *Alamo*: that whether the employee *believes* that she is a volunteer or whether or not the employee *expects* compensation are not determinative. In *Alamo*, the employees did not expect compensation; the opinion notes that one worker testified that "no one ever expected any kind of compensation, and the thought is totally vexing to my soul." *Id.* at 300–301. But this, the Court held, was not determinative: "these protestations, however sincere, cannot be dispositive. The test of employment under the [FLSA] is one of 'economic reality.'"  *Id.*  On that score, *Alamo* presented a very different factual scenario than offered in *Portland Terminal*, and the Court, accordingly, applied the FLSA "even to those who would decline its protections."  *Id.* at 302.  And so the *Alamo* Court affirmed the Eighth Circuit, which had concluded under the "economic reality" test that "the foundation has subjected itself to the standards Congress has prescribed for the benefit of employees. The requirements of the Fair Labor Standards Act apply to its laborers." *Donovan v. Tony and Susan Alamo Found.*, 722 F.2d 397, 400 (8th Cir. 1983).

Employing the "economic reality" test to determine that certain co-operative homeworkers were employees, *Goldberg* also focused on factual determinations, including that the workers were "regimented under one organization, manufacturing what the organization desires and receiving the compensation the organization dictates."  *Goldberg*, 366 U.S. at 32.  Further, the management "fixes the piece rates" and "can hire or fire the homeworkers."  *Id.* at 33.

In order, then, to evaluate the "economic reality" of Plaintiff's relationship with CGI, the Court must look at the facts alleged in the Complaint. Plaintiff alleges that: it is CGI that "sets the work rules, assignments and conditions of employment for the 'volunteer' employees, assigning

---

to students, who are not employees of the schools they attend, and "[a]ccepting the unchallenged findings here that the railroads receive no 'immediate advantage' from any work done by the trainees," the *Portland Terminal* Court held that they were not employees for FLSA purposes.  *Id.* at 152-53.

each individual to a particular task and specifying the time and manner" for performance (AC ¶ 37); CGI provides training and instruction to the "volunteer" employees (AC ¶ 38); the "volunteer" employees have no distinct place of work to which they report (AC ¶ 39); "volunteers" may be required to provide their own equipment (AC ¶¶ 40, 57, 58, 60); and CGI maintains the records of the "volunteer" employees (AC ¶ 41). Plaintiff further alleges that the labor of the "volunteers" is necessary and integral to CGI's business and the operation of the Series (CGI itself has called it "invaluable" or perhaps "impossible" to do without, AC ¶ 42), and that this labor inures to CGI's benefit (AC ¶¶ 42, 48). *See also* AC ¶¶ 55-60 (CGI had "authority to hire" Plaintiff and solicited her labor; "set work rules, assignments, and conditions of employment"; provided "written instructions … assignments and duties.") Plaintiff's allegations demonstrating the indispensability of CGI's use of "volunteers" also are consistent with the existence of the CGI "Coordinator, Volunteer Services" position who, along with staff, creates "Volunteer Plans" and sets volunteer headcounts. AC ¶¶ 43-44. Finally, that CGI pays some workers to perform the same functions as other unpaid workers (AC ¶ 49) is indicative that the "volunteer" laborers are employees. Accepted as true, these facts can only support a finding that Plaintiff and the proposed class are employees of CGI; indeed, they are indispensable to CGI's core business of putting on for-profit, registration fee-based, athletic competitions.

CGI cites *Alamo* and *Rogers v. Schenkel*, 162 F.2d 596 (2d Cir. 1947), for the proposition that "the Supreme Court and other federal courts have squarely rejected" Plaintiff's contention that for-profit companies may not engage volunteer labor, Def. Br. at 12, but *Alamo* does not "squarely reject" this position; in fact, as discussed above, it actually supports Plaintiff's claim. Further, it is likely that the Second Circuit's *Rogers* decision (addressing a trial court's post-trial findings), issued just months after *Portland Terminal* came down, would come out differently today under *Alamo*, or would at least require some level of analysis beyond its bare three sentences. None of the other cases cited by CGI provide it any additional help, although they do describe the factual inquiry necessary to the "employee" determination; tellingly, none were decided under Rule 12.

13

*Okoro v. Pyramid 4 Aegis*, 2012 WL 1410025 (E.D. Wisc. April 23, 2012), decided at summary judgment, does deserve brief mention. The court there concluded that the plaintiff was an employee, highlighting the fact that (as here) her work "conferred an immediate benefit to the company," putting the case "in stark contrast" with *Portland Terminal*.  2012 WL 1410025 at *10. The court also took special note of the relative lack of authority endorsing for-profit use of "volunteer" labor. 2012 WL 1410025 at *8 ("This court has been unable to find any regulations addressing the circumstances under which a person can 'volunteer' for a for-profit entity and have his work not fall under the provisions of the FLSA."). Given the particular novelty of this issue, Plaintiff respectfully suggests that the Court should permit factual development of the claims.

## III.   PLAINTIFF ADEQUATELY PLEADS FRAUD UNDER RULE 9

Federal Rule of Civil Procedure 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The Eighth Circuit has held that a Rule 9-compliant pleading is one that enables the defendant to specifically respond to the claims; essentially, the complaint should identify the "who, what, where, when, and how" of the fraud. *See Blaes*, 2014 WL 6885830, at *2 (quoting *Joshi*, 441 F.3d at 556). Plaintiff's Complaint easily clears this hurdle.

First, Plaintiff alleges the time, manner, and circumstances of specific misrepresentations, along with the identities of people making the misrepresentations. For instance, Plaintiff alleges that Defendant's "Industry Alliances Coordinator," Jennifer Nanista, in advance of the October 2011 St. Louis Series event, solicited volunteers by telling Plaintiff's bicycling club coordinator that the event "revolved around helping charities." AC ¶ 50.  This message was relayed to Plaintiff. *Id.*  Between September and October 2011, Defendant's employee Liz Davis emailed to Plaintiff volunteer registration instructions, including a link to a "volunteer website" that represented that volunteers "would be supporting local charities with their labor."  AC ¶¶ 50-51. Nanista again solicited volunteers in advance of the 2012 Series race in St. Louis. Plaintiff agreed, again, to volunteer based on her understanding from the representations previously made to her. AC ¶ 53.

14

The foregoing allegations identify the representations made, specific individuals who made them, and approximate dates. Some even reference representations made in Defendant's own website or collateral materials—which clearly provides sufficient particularity.

Second, all of these representations are consistent with Plaintiff's plausible allegation of a broader scheme or plan to enlist a "volunteer" labor force by means of misrepresentation. Plaintiff alleges that Defendant promotes "charity as the 'foundation' or 'heart' of the Series," and purposely conflates the participating charities with Defendant and the Series so as "to create the impression that the 'volunteer' employees are providing their services to a charitable event and are supporting the Official Charity Sponsors." AC ¶ 48; *see also* ¶¶ 31, 32, 35, 36, 92, 93. In fact, the labor of the volunteers goes not to assisting the charities, but instead to assisting Defendant with the core operation of its business, putting on for-profit road races. AC ¶ 42, 48. Far from "bald" or "conclusory," Def. Br. at 14, Plaintiff's allegation of a scheme is bolstered by all of the above, along with detailed allegations about the emphasis that Defendant places on its "Official Charity" program, *see* AC 23-32, and about the invaluable role played by Defendant's "Volunteer Services" program, *see* AC ¶¶ 42-44. Having provided the "who, what, where, and when" of various misrepresentations, along with additional detailed allegations that Defendant can compare with its own website, operations, and promotional materials, Plaintiff has more than satisfied Rule 9.

## IV.   TO THE EXTENT PLAINTIFF'S COMPLAINT IS FOUND DEFICIENT, PLAINTIFF SEEKS LEAVE TO AMEND

If any portion of the Complaint is found deficient, Plaintiff requests leave to amend to cure the deficiencies, which should be freely allowed when justice so requires. Fed. R. Civ. P. 15(a)(2).

## CONCLUSION

For the foregoing reasons, this Court should deny CGI's Motion to Dismiss in its entirety. Plaintiff joins in the request, pursuant to L.R. 4.02 for oral argument, which Plaintiff believes would allow for more comprehensive discussion of the issues.

Dated: February 23, 2015                SIMMONS HANLY CONROY

                                        */s/ Derek Y. Brandt*

15

Derek Y. Brandt, *pro hac vice*
Bryant Kyle Bass, #65768
One Court Street
Alton, IL 62002
(618) 259-2222 Tel.
(618) 259-2251 Fax
dbrandt@simmonsfirm.com
kbass@simmonsfirm.com

***Attorneys for Plaintiff***

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 23rd day of February, 2015, a true and accurate copy of the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

Dennis M. Childs, Esq.
Summer J. Wynn, Esq.
Shannon L. Sorrells, Esq.
Cooley LLP
4401 Eastgate Mall
San Diego, CA 92121-1909
swynn@cooley.com
dchilds@cooley.com
ssorrells@cooley.com

Charles M. Poplstein, Esq.
Thompson Coburn LLP
One US Bank Plaza
St. Louis, MO 63101
cpoplstein@thompsoncoburn.com

*/s/ Derek Y. Brandt*